IN THE UNTED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

ISHANTA SHOALS,                          )
                                          )
        Plaintiff,                        )
                                          )
                                          )
    v.                                    )        Case No. CIV-22-266-RAW-GLJ
                                          )
CITY OF MORRIS, OKLAHOMA,                 )
                                          )
        Defendant.                        )

## REPORT AND RECOMMENDATION

On September 22, 2022, Plaintiff Ishanta Shoals filed this action for discrimination arising out of her employment as a police officer with the City of Morris, Oklahoma [Docket Nos. 1-2]. On December 6, 2022, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Docket No. 15]. This matter is now before the Court on motion for summary judgment by Defendant City of Morris. For the reasons set forth below, the undersigned Magistrate Judge recommends that Defendant City of Morris, Oklahoma's Motion for Summary Judgment and Brief in Support [Docket No. 34] be GRANTED, and the case DISMISSED.

### Procedural History

Plaintiff's September 2022 Complaint in this case alleges employment claims of wrongful termination and retaliation, each in violation of Title VII and the Age Discrimination and Employment Act ("ADEA") and Oklahoma law, as well as retaliation

in violation of Title VII [Docket No. 2, p. 1 ¶ 3]. Plaintiff's Complaint asserts all these claims in one paragraph. *Id.* "At minimum, [R]ule 8(a) requires a comprehensible, 'short and plain' statement of the claim(s) sufficient to give the opposing party reasonable and fair notice of the basis of the complaint." *Abdelsamed v. Colorado*, 6 Fed. Appx. 771, 772 (10th Cir. 2001). Although the undersigned Magistrate Judge proceeds on the substance of the issues related to the motion for summary judgment, Counsel is cautioned that the present form of Plaintiff's Complaint is improper, and each claim should have been clearly and separately set forth. *See, e.g.*, *Park v. TD Ameritrade Tr. Co.*, 2010 WL 4608225, at *2 (D. Colo. Nov. 5, 2010) ("[A]s a structural matter, the Title VII Complaint is deficient because it purports to assert multiple claims for relief within each 'Claim for Relief.' . . . This format, which is repeated in Claims Three, Four, and Six, is improper under Rule 8 of the Federal Rules of Civil Procedure."). Additionally, Plaintiff's Complaint appears devoid of claims related either to a hostile work environment or to discrimination based on failure to promote, but these two purported claims are substantively argued by both parties in the briefing and are seemingly raised in Plaintiff's EEOC Charge of Discrimination.[1] Although a motion to dismiss on these issues likely would have been well taken, the undersigned Magistrate Judge nevertheless addresses the substantive failures of such purported claims below, only out of an abundance of caution.

Defendant filed the present motion for summary judgment on August 14, 2023 [Docket No. 34], alleging that Plaintiff's claims fail as a matter of law and that she cannot

---

[1] Discussing potential claims in an EEOC charge does not equate to raising them in a Complaint in Federal Court.

satisfy the requisite elements. In her response, Plaintiff asserts that the three primary components to her Complaint are: (i) gender and/or race discrimination, (ii) retaliation, and (iii) hostile work environment. *See* Docket No. 42, pp. 7-10. It thus appears Plaintiff has abandoned any claim as to age discrimination, and the undersigned Magistrate Judge finds any claim pursuant to the ADEA should therefore be dismissed. The Court proceeds to address the remaining three purported claims to the extent possible.

## I.    Law Applicable

Summary judgment is appropriate if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party must show the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), with the evidence taken in the light most favorable to the non-moving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

In employment discrimination cases, "[m]any of the highly fact-sensitive determinations involved in these cases are best left for trial and are within the province of the jury." *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015). "The rule in this Circuit . . . is that an employment discrimination suit will always go to the jury so long as

3

the evidence is sufficient to allow the jury to disbelieve the employer's proffered reason for the employment action. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1177 (10th Cir. 1998) (Tacha, J., concurring in part) (citing *Randle v. City of Aurora,* 69 F.3d 441, 451-452 & n. 15 (10th Cir. 1995) ("[I]f this inferential evidence is sufficient to allow a plaintiff to prevail at trial, it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial.").

## II.    Factual Background

Most of Defendant's proposed undisputed facts are not disputed by Plaintiff. Although Defendant does not allege it as part of the undisputed facts, it is first relevant that Plaintiff's Complaint alleges she is an African American woman and that Defendant offers no discussion or arguments contrary to this fact. *See* Docket No. 2, p. 2, ¶ 6. The undisputed facts in this case reflect that Plaintiff began at-will employment with the City of Morris, Oklahoma, in July 2017. *See* Docket No. 34, p. 11, ¶¶ 1-2. She suffered an on-the-job injury around December 30, 2019, and was out on workers' compensation leave until June 15, 2020. *Id.*, pp. 11-13, ¶¶ 3-4, 14. During the time she was out on leave, the Chief of Police position became vacant, and Plaintiff was one of five applicants for the position. *Id.*, p. 12, ¶¶ 5-6. During the application process, Plaintiff posted on social media that if she were "wrongfully denied opportunities, trust me I will come for what should be rightfully mine." *Id.*, p. 12, ¶ 7 & Ex. 7.[2] The Morris City Council appointed another

---

[2] Neither the undisputed fact nor the apparent screenshot of this social media post indicates a date for this statement; however, Plaintiff has not disputed this alleged timing or the exhibit from Defendant and the Court therefore accepts them as true, both as to substance and timing.

Officer, Tim Bell, to Chief of Police in May 2020. *Id.*, ¶ 8. Mayor Jeremy Avery and several City Council members submitted affidavits in support of the summary judgment motion indicating that Plaintiff did not receive an interview due to concerns regarding her dependability and excessive tardiness, as well as her social media post. *Id.*, Exs. 1, 8.

The day of Bell's appointment (May 11, 2020), Plaintiff texted Chief Bell to ask if he was going to fire her, and he indicated he had no intention of firing her. *Id.*, ¶ 10 & Ex. 9, p. 22. In the weeks before she returned to work on June 15, 2020, Plaintiff contacted Mayor Avery and met with him regarding her concerns that she was not selected for Chief of Police, and expressed a belief that hiring Bell over her automatically created a hostile work environment that she wanted to guard against. *Id.*, ¶¶ 11-13. Plaintiff again met with the Mayor on June 15, the day she returned to work, about the same concerns. *Id.*, p. 13, ¶¶ 15-16. From June 19, 2020 through July 8, 2020, Plaintiff submitted five written complaints regarding, *inter alia*, hostile work environment, race and gender discrimination, retaliation, sexual harassment, and defamation of character. *Id.*, ¶¶ 18-22. The City of Morris outsourced an investigation into these complaints to attorney Dianna Berry, who ultimately found her complaints were unsubstantiated. *Id.*, p. 14, ¶¶ 23-25. Between July 16, 2020 and September 21, 2020, Plaintiff made ten more complaints containing, *inter alia*, similar allegations as well as complaints regarding issuance of equipment to officers. *Id.*, pp. 14-15, ¶¶ 26-28, 30-36. Plaintiff likewise made these same complaints, "and many

more," directly to Chief Bell via text message. *Id*, p. 15, ¶ 37 & Ex. 9.[3] Plaintiff believes Chief Bell is a racist and told him so. *Id.*, ¶ 39.

On August 12, 2020, the City received a Notice of Charge of Discrimination, which Plaintiff perfected on September 29, 2020. *Id.*, pp. 14-15, ¶¶ 29, 41 & Exs. 20, 29. Plaintiff's Charge alleged discrimination and hostile work environment based on race, sex, and retaliation in violation of Title VII. *Id,* Ex. 29. Plaintiff's employment was terminated on September 23, 2020 (six days prior to her Charge of Discrimination being perfected). *Id.*, p. 15, ¶ 40. Although Defendants do not include this fact, it also appears that at the time of her termination she held the position of Assistant Chief of Police. *See* Docket No. 2, p. 2, ¶ 7. Defendant provided a written Termination of Employment, stating her termination was based on two instances of insubordination, a problem with her job performance on September 21, 2020, and two instances of equipment tampering dated September 21 and 22, 2020. Docket No. 34, Ex. 28. Plaintiff disputes the reasons provided in Defendant's letter of termination. Plaintiff's perfected charge of discrimination makes no mention of her termination, instead focusing on her failure to be promoted to Chief of Police and the hostile work environment with Chief Bell, which she alleged included racism, sex discrimination, and retaliation. *Id.*, Ex. 29. The evidence before the Court reflects the Charge has not been amended to include her termination.

---

[3] Exhibit 9 is 84 pages in length, containing screenshots of text messages between Chief Bell and Plaintiff. Defendant asserts that these text messages are "only a limited number" and serve "as an example of the consistent barrage of accusatory and uncivil messages from Plaintiff." Docket No. 34, p. 15, ¶ 37 n.6.

Plaintiff disputes three facts offered by Defendant: (i) that the decision not to promote her in 2020 was not based on her race, gender, or on-the-job injury, asserting that it was based on one or more those factors; (ii) that she did not accuse Chief Bell of being charged with a felony in Arkansas and merely asked if he had been; and (iii) that Defendant's stated reasons for discharging her (insubordination, job performance, and equipment tampering) were false, asserting she was instead discharged due to her race, gender, and/or she was fired in retaliation. *See* Docket No. 34, pp. 12,15, ¶¶ 9, 38, 40 & Ex. 28; No. 42, pp. 3-5, ¶¶ 9, 38, 40.

### III.    Analysis

### A.  Race and/or Gender Discrimination, Title VII

"Title VII prohibits employment discrimination based on 'race, color, religion, sex, or national origin.'" *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1213 (10th Cir. 2022) (*quoting Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). To prove a case of either gender or race discrimination, "a plaintiff must provide either direct evidence of discrimination or prevail under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973)." *Morman v. Campbell County Memorial Hospital*, 632 Fed. Appx. 927, 933 (10th Cir. 2015) (*citing Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). Plaintiff does not appear to rely on any direct evidence, nor challenge Defendant's assertion that the *McDonnell Douglas* test applies. The Tenth Circuit discussed the *McDonnell Douglas* test in *English v. Colorado Dept. of Corrections*, 248 F.3d 1002 (10th Cir. 2001):

> In order to survive summary judgment, a plaintiff relying on *McDonnell Douglas* bears an initial burden of establishing a prima facie case intended to eliminate the most common nondiscriminatory reasons that might account for the adverse employment action. Once the plaintiff has established a prima facie case, the burden then 'shift[s] to the employer to articulate some legitimate, nondiscriminatory reason' for taking an adverse employment action against the plaintiff. If the defendant successfully meets its burden of production, the burden shifts back to the plaintiff to put forth evidence sufficient to allow a jury to find that the defendant's reason is pretextual, *e.g.*, that it is unworthy of belief.

248 F.3d at 1008 (*citing McDonnell Douglas*, 411 U.S. at 802). *See also Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) ("To survive summary judgment on a Title VII claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas*[.]") (*citing Khalik*, 671 F.3d at 1192). The undersigned Magistrate Judge will thus apply *McDonnell Douglas* to Plaintiff's discrimination claims based on both gender and race, as well as her Title VII retaliation claim.

(i). <u>Exhaustion of Administrative Remedies</u>.  Defendant first contends Plaintiff failed to exhaust administrative remedies with respect to her termination, or the alleged discriminatory actions in her Complaint, *i.e.*, (i) restrictions on when she could drive her unit home, (ii) being assigned malfunctioning equipment when Caucasian employees were given brand new equipment, (iii) not be allowed to make up missed work hours when other were, (iv) being restricted from information such as staff schedules that she needed to do her job as supervisor, and (v) being stripped of job duties.  *See* Docket No. 2, pp. 2-3, ¶ 8(a)-(e).  As noted above, Defendant points out that Plaintiff never amended her original

Charge of Discrimination to include her termination or an of these acts and therefore contends the only successfully-exhausted claims are Plaintiff's Title VII claims of race/gender discrimination, retaliation, and hostile work environment arising out of the City's failure to promote her to Chief of Police.  Plaintiff appears to agree.  In her response, she asserts she provided "allegations of failure to promote, hostile work environment, discrimination, retaliation due to her race or gender," and had therefore exhausted her administrative remedies.  Docket No. 42, p. 7.

"Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)).  "Under the provision, an employee must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice giving rise to the charge unless the employee has initially instituted proceedings with a State or local agency, in which case the employee has 300 days to file her EEOC charge." *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 Fed. Appx. 675, 687-688 (10th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1)).  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (quotation omitted).

"[E]ach discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Morgan*, 536

U.S. at 110-113). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.* (quotation omitted). Importantly, "where discrete incidents of discrimination occur after an employee files an initial EEOC charge, the employee must file an additional or amended EEOC charge to satisfy the exhaustion requirement." *Salemi*, 747 Fed. Appx. at 688 (citing *Martinez*, 347 F.3d at 1210 (finding allegations as to September 2000 reprimand and April 2001 termination unexhausted where employee filed charge in July 1999 even though September 2000 and April 2001 incidents were part of a continuing pattern of alleged unlawful action)). "This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Foster*, 365 F.3d at 1195. The undersigned Magistrate Judge likewise notes that "a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018).

Accordingly, aside from whether the claims were properly raised in the Complaint, the undersigned Magistrate Judge finds that Plaintiff has failed to exhaust any Title VII claims related to her termination and the only exhausted claims remaining relate to claims of race/gender discrimination, retaliation, and hostile work environment arising out of the City's failure to promote her to Chief of Police. *See, e.g.*, *Logsdon v. Turbines, Inc.*, 399

Fed. Appx. 376, 379 (10th Cir. 2010) ("Logsdon had the opportunity to review the Charge before signing it on November 20, 2007, but she did not add the termination claims to the Charge. Because of that failure, it was not reasonable to expect the EEOC to investigate her discharge as discriminatory or retaliatory" even where Plaintiff had mentioned the termination in a "remote" reference during the investigation.).  The undersigned Magistrate Judge further notes that, due to Plaintiff's failure to comply with Fed. R. Civ. P. 8(a), it is unclear whether she has properly raised claims solely arising out of her failure to promote, as in the Complaint she neither uses "failure to promote" nor mentions that she was not chosen to even interview for the Chief of Police position.  *See generally* Docket No. 2. However, Plaintiff does refer in her Complaint to her EEOC Complaint and investigation generally, where she raises the "failure-to-promote" issue and a claim of hostile work environment, and Defendant's Motion for Summary Judgment appears to assume she has successfully raised both such claims, *see* Docket No. 34, p. 18.  Assuming out of an abundance of caution that Plaintiff has somehow raised in her Complaint claims of race and/or gender discrimination, as well as retaliation and hostile work environment, based on the *exhausted* EEOC claims, *see* Docket No. 34, Ex. 29, the undersigned Magistrate Judge proceeds to address those remaining claims.

(ii).  Gender Discrimination.

*(a).  Prima Facie Case*.  "A prima facie case [of gender discrimination] generally requires a plaintiff to show, by a preponderance of the evidence, [i] that she is a member of a protected class, [ii] she suffered an adverse employment action, and [iii] the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett*

11

*v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (These elements "are neither rigid nor mechanical, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.") (quotation omitted) (*citing E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir. 2007)). This test is "not onerous." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1152 (10th Cir. 2005) ("It is worth repeating that the prima facie stage in the *McDonnell Douglas* test is not onerous.").

Only the third factor appears to be at issue here. As a woman, Plaintiff is a member of a protected class. Additionally, Defendant's failure to promote Plaintiff constitutes an adverse employment action as it "constitutes a significant change in employment status, such as hiring, firing, *failing to promote*, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added); *see also Wilson v. Harvey*, 156 Fed. Appx. 55, 58 (10th Cir. 2005) ("An adverse employment action is an indispensable prerequisite in a Title VII disparate treatment case that contains no direct evidence of intentional discrimination."). The question, then, is whether the challenged action occurred under circumstances giving rise to an inference of gender or sex discrimination.

Plaintiff, using an older four-part formulation[4] for a prima facie case, asserts without legal support that she has made a prima facie case because her gender is a protected

---

[4] "We note that the district court evaluated Ms. Tabor's prima facie case under an older, four-part test from the original *McDonnell Douglas*. We use a more recent variation of this test, a three-part

category, she was qualified for her job and the position of Chief of Police, she was terminated, and her job as Assistant Chief of Police could continue to exist should the Chief of Police be absent for an extended period of time and that the role of patrol officer still remains. Having asserted without support that she established a prima facie case, she provides no further discussion on her claim for gender discrimination.

Based on the facts in the record, Plaintiff does not put forth any evidence supporting an inference of sex or gender discrimination related to the City's failure to promote her.[5] Plaintiff seems to imply in her response brief that the number of complaints she made regarding gender (or race) discrimination make them true. However, Plaintiff does not dispute that her allegations, as investigated by Ms. Berry, were unsubstantiated. Taken together, Plaintiff's allegation of gender discrimination with no more than an assertion that she is a woman, is insufficient to give rise to an inference of gender-based discrimination for her failure to promote. *See Bennett*, 792 F.3d at 1267 ("Ms. Bennett points to no evidence in the record, either direct or circumstantial, supporting a claim of *animus*.").

Second, Plaintiff puts forth no evidence that she was treated differently than similarly situated employees, which is another way she could establish a prima facie case. Plaintiff asserts in her Complaint and again in her Response brief that she was treated differently from her male and Caucasian comparators, but provides no evidence other than her own assertions. In particular, Plaintiff identifies no comparators, much less any who

---

test articulated by the Supreme Court in [*Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)]*,* which the Tenth Circuit expressly prefers." *Tabor v. Hilti, Inc*., 703 F.3d 1206, 1216 n.4 (10th Cir. 2013).

[5] Indeed, Plaintiff relies on her unexhausted claim of termination rather than the failure to promote.

posted social media threats to sue Defendant and were then given preferential treatment over her. *See Mitchell v. Kansas City Kansas Sch. Dist.*, 714 Fed. Appx. 884, 887 (10th Cir. 2017) (The district court "articulated the third element as requiring evidence that an employer treated similarly situated employees differently, which, as indicated above, is one way to show adverse action under circumstances creating an inference of discrimination[.]").  Plaintiff therefore fails to carry her burden of establishing a prima facie case of gender discrimination.

(b).  *Legitimate, Nondiscriminatory Reasons & Pretext*.  Even if Plaintiff could establish a prima facie case of gender discrimination, Defendant offers legitimate, nondiscriminatory reasons for failing to promote her to Chief of Police.  The undisputed facts reflect Mayor Avery and City Council members had concerns regarding her dependability, tardiness, and an inflammatory social media post.  Docket No. 34, Exs. 1, 8.  Plaintiff disputes the reasons she was not chosen as Chief of Police, but offers no evidence, much less evidence related to her sex, to contradict them and specifically does not dispute the content of her social media post.  As to her tardiness, Plaintiff says she only received one written warning and even Chief Bell admitted he had been tardy on a couple of occasions.  His deposition testimony, provided by Plaintiff, indicates that there was usually a reason for his tardiness and he communicated that to the office, but that Plaintiff "most of the time" did not communicate that, although sometimes she did.  *See* Docket No. 42, Ex. 3, pp. 36-37.  Either way it is assessed, none of this relates to Plaintiff's gender.  Plaintiff's opinions of her own performance and Defendant's actions are insufficient to establish pretext. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir.

2000) (the relevant pretext inquiry is how facts appeared to the decision maker, not the employee).  The facts in the record before the Court demonstrate Defendant honestly held those concerns and acted on such beliefs.  *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007) ("The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.") (quotation omitted).  Accordingly, despite affording Plaintiff all necessary inferences, the Court finds that Plaintiff fails to make the requisite prima facie showing that she suffered an adverse employment practice actionable under Title VII or that she establishes pretext.  Defendant is therefore entitled to summary judgment on her claim for gender discrimination.

(iii).  Race Discrimination.

*(a).  Prima Facie Case.*  "A prima facie case [of race discrimination] generally requires a plaintiff to show, by a preponderance of the evidence, [i] that she is a member of a protected class, [ii] she suffered an adverse employment action, and [iii] the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett*, 792 F.3d at 1266 (These elements "are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.") (quotation omitted) (*citing PVNF*, 487 F.3d at 800).  And "[i]t is worth repeating that the prima facie stage in the *McDonnell Douglas* test is not onerous." *Orr*, 417 F.3d at 1152. Again, only the third factor appears to be at issue.  As an African American, Plaintiff is a member of a protected class.  And as stated above, Plaintiff's failure of promotion is clearly an adverse employment action.  The

question, then, is whether the challenged action occurred under circumstances giving rise to an inference of race discrimination.

Plaintiff's assertion of a prima facie case of race discrimination was done concurrent with her assertion of gender discrimination, using the older four-factor formulation for a prima facie case. The only difference is that for this claim she asserts her race is a protected category. Having asserted that she established a prima facie case, she provides no further discussion. The evidence in the record demonstrates only that Plaintiff regularly accused Chief Bell and Defendant of being racist. Plaintiff alleges insufficient facts to give rise to an inference of race-based discrimination based on a failure-to-promote claim. *See Bennett*, 792 F.3d at 1267 ("Ms. Bennett points to no evidence in the record, either direct or circumstantial, supporting a claim of *animus*.") (emphasis added). Accordingly, Plaintiff has failed to carry her burden of establishing a prima facie case of race discrimination.

Based on the facts in the record, Plaintiff does not put forth any evidence supporting an inference of race discrimination related to the City's failure to promote her.[6] Plaintiff seems to imply in her response brief that the number of complaints she made regarding race discrimination make them true, but again, Plaintiff does not dispute that her allegations of race/gender discrimination, as investigated by Ms. Berry, were unsubstantiated. Taken together, Plaintiff's allegation of race discrimination, with no more than an assertion that

---

[6] Again, Plaintiff generally relies on her unexhausted claim of termination rather than the failure to promote but the undersigned Magistrate Judge addresses race discrimination in terms of the only claim properly raised: failure-to-promote.

16

she is African American, is insufficient to give rise to an inference of gender-based discrimination for her failure to promote. *See Bennett*, 792 F.3d at 1267. Additionally, as with her claim of gender discrimination, Plaintiff identifies no evidence that she was treated differently than similarly situated employees. *See Mitchell*, 714 Fed. Appx. at 887 (same as above). Either way it is assessed, Plaintiff fails to carry her burden of establishing a prima facie case of race discrimination.

(b). *Legitimate, Nondiscriminatory Reasons & Pretext*. Even if Plaintiff could establish a prima facie case of race discrimination, Defendant offers legitimate, nondiscriminatory reasons for failing to promote her. The undisputed facts reflect Mayor Avery and City Council members had concerns regarding her dependability, tardiness, and an inflammatory social media post. Docket No. 34, Exs. 1, 8. Plaintiff disputes the reasons she was not chosen as Chief of Police, but offers no evidence, much less evidence related to her race, to contradict them and specifically does not dispute the content of her social media post. The facts in the record before the Court demonstrate Defendant honestly held those concerns and acted on such beliefs. *Swackhammer*, 493 F.3d at 1170 (same as above) (quotation omitted). Plaintiff's opinions of her own performance and Defendant's actions are insufficient to establish pretext. *Kendrick*, 220 F.3d at 1231 (the relevant pretext inquiry is how facts appeared to the decision maker, not the employee). Accordingly, despite affording Plaintiff all necessary inferences, the Court finds that Plaintiff fails to make the requisite prima facie showing that she suffered an adverse employment practice actionable under Title VII or that she established pretext. Defendant is therefore entitled to summary judgment on Plaintiff's claim for race discrimination.

17

### B. Retaliation

Next, Plaintiff alleges a claim of retaliation in violation of Title VII. As with her claims for gender and race discrimination, there is no direct evidence of retaliation, and the *McDonnell Douglas* burden-shifting analysis is therefore applied. *See Robinson v. Barrett*, 823 Fed. Appx. 606, 610 (10th Cir. 2020) (applying *McDonnell Douglas* test to retaliation claim where there was no direct evidence). The undersigned Magistrate Judge therefore first addresses whether Plaintiff establishes a prima facie case of retaliation, which requires her to "show (1) engagement in activity protected under Title VII; (2) a materially adverse employment action; and (3) a causal connection between the protected activity and the materially adverse action." *Id.* (*citing Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

Filing the EEOC complaint would certainly be a protected activity under Title VII, although Plaintiff does not rely on this basis. She instead alleges that her fifteen written complaints to Mayor Avery are protected activity and that the adverse employment action was being "denied equipment, training, and access," *see* Docket No. 42, p. 9, after she engaged in her series of complaints to Mayor Avery. Importantly, Plaintiff was denied the opportunity to interview for the Chief of Police position prior to May 11, 2020, when Chief Bell was selected. Her fifteen written Complaints and her EEOC Charge were all made *after* that decision had been made, from June – September 2020. Accordingly, neither her failure to be promoted nor her unexhausted termination, as discussed *supra*, are relevant for purposes of Plaintiff's retaliation claim.

18

Defendant contends that the series of fifteen complaints was unreasonable, disruptive, affected the morale of other employees, and were so egregious as to fall outside the category of protected activity. In support, Defendant points out that Plaintiff also continued to make these same accusations directly to Chief Bell via text message despite being told to direct her complaints to Mayor Avery. The *excerpts* of these written texts with Chief Bell comprise over 80 pages of screenshots, *see* Docket No. 34, Ex. 9. Defendant contends the sheer volume and antagonistic nature place her complaints outside Title VII's protection. The Tenth Circuit instructs that "frequent, voluminous, and sometimes specious complaints" and "antagonistic behavior toward [] superiors", which "often bypass[es ]immediate superiors" is "not reasonable" and "does not constitute protected opposition." *Robbins v. Jefferson County Sch. Dist. R-1*, 186 F.3d 1253, 1259-1260 (10th Cir. 1999), *abrogated on other grounds, Morgan*, 536 U.S. at 116. The undersigned Magistrate Judge agrees that this guidance applies to Plaintiff's voluminous complaints.

Furthermore, Plaintiff fails to identify with any specificity "what facts she believes constitute retaliatory harassment which might rise to the level of an adverse employment action." *Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1286 (D. Kan. 2003). She generally alleges she was denied equipment, training, and "access," but cites to no specific instances in her response. Docket No. 42, p. 9. Furthermore, the Complaint merely enumerates "discriminatory treatment," not retaliatory treatment, *see* Docket No. 2, pp. 2-3, ¶ 8, and even had it referenced retaliation, conclusory allegations are insufficient at the summary judgment stage. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th

19

Cir. 2003) ("Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment.") (quotation omitted).  Plaintiff asserts that she was retaliated against for making her complaints, without specifying what form that retaliation took, and asks the Court to assume that any actions taken against her were discriminatorily motivated.  That is not the standard.  *See, e.g.*, *Henderson*, 263 F. Supp. 2d at 1287-1288 ("[P]laintiff merely rests her retaliation claim on the fact that she has raised multiple claims of discrimination over the course of her employment. Regardless of an employee's participation in protected activity, however, she 'may not simply hold her employer hostage by proclaiming that any adverse employment decision will be construed as discriminatorily motivated.' Even where a plaintiff has established an inference of retaliatory motive based on timing, she still must 'present . . . direct evidence of retaliatory animus or circumstantial evidence which adequately demonstrates that an improper motive was a substantial motivation in the employer's decision.'") (quoting *Hernandez v. McDonald's Corp.,* 975 F. Supp. 1418, 1427 (D. Kan. 1997) and *Gonzagowski v. Widnall,* 115 F.3d 744, 749 (10th Cir. 1997)).  *Cf. Rolling v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 401 (11th Cir. 1989) ("FDLE denied Rollins' applications for promotions because she had earned the reputation as a disruptive complainer who antagonized her supervisors and colleagues and impaired the morale of her unit. Such conduct, even when associated with complaints of discrimination, has been held to fall outside the protection of section 704(a) and to provide the employer with a legitimate basis for its action.").  Accordingly, Plaintiff can establish none of the three factors required to establish a prima

facie case of retaliation pursuant to Title VII, and Defendant is entitled to summary judgment.

### C. Hostile Work Environment

As with the failure to promote claims, Defendant likewise assumes Plaintiff has raised a hostile work environment claim despite the fact the term is never used in Plaintiff's Complaint. *See* Docket No. 2. The undersigned Magistrate Judge addresses the issue of a hostile work environment out of an abundance of caution, despite no apparent basis for such a claim, as the term *was* used in Plaintiff's September 29, 2020 Charge of Discrimination filed with the EEOC. "Title VII is not 'a general civility code' for the office; thus, 'the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim.'" *Clayton v. Dreamstyle Remodeling of Colorado, LLC*, 2022 WL 910957, at *10 (D. Colo. Mar. 28, 2022) (*quoting Morris v. City of Colo. Springs*, 666 F.3d 654, 663-664 (10th Cir. 2012) (citations omitted)). A hostile work "environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). These components are assessed under the totality of the circumstances, including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The inquiry should also consider the "social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). In other words, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (quotation omitted).

As to a hostile work environment claim related to gender, "[t]o overcome summary judgment on this claim, the plaintiff must show "(1) [s]he was discriminated against because of h[er] sex, and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of h[er] employment." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). "To maintain a claim under Title VII, . . . [t]he plaintiff's sex need only be a 'motivating factor' in the unlawful employment practice." *Id.* (*citing* 42 U.S.C. § 2000e-2(m)). For a racially hostile work environment, Plaintiff "'is required to demonstrate that a rational jury could conclude that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Sotunde v. Safeway, Inc.*, 716 Fed. Appx. 758, 765 (10th Cir. 2017) (quoting *Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003) (internal quotation marks omitted)). "This means the plaintiff must: (1) subjectively perceive the conduct to be severe or pervasive, and (2) show that a rational jury could find that the workplace is

permeated with discriminatory intimidation, ridicule, and insult." *Ford*, 45 F.4th at 1228

(quotation omitted).  In either instance,

> a plaintiff must establish the following four [prima facie] elements:  (1) she
> is a member of a protected group; (2) she was subject to unwelcome
> harassment; (3) the harassment was based on [race or gender]; and (4) [due
> to the harassment's severity or pervasiveness], the harassment altered a term,
> condition, or privilege of the plaintiff's employment and created an abusive
> working environment.

*Lounds*, 812 F.3d at 1222 (quoting *Harsco Corp. v. Renner,* 475 F.3d 1179, 1186 (10th

Cir. 2007)).

Defendant contends that Plaintiff suffered no harassment; rather, she was the person

harassing others.  Alternatively, Defendant contends that even if she was harassed, it was

not based on her race or gender, but due to her own conduct and accusations as to Chief

Bell.  Plaintiff contends there are genuine issues of material fact.  Her sole statement in

support of this argument is that under the totality of circumstances, she was subjected to a

hostile work environment based on "the constant friction with Tim Bell and the denied

opportunities."  Docket No. 42, p. 10.  Plaintiff fails to offer any facts demonstrating that

her sex or race was a motivating factor in any alleged discrimination against her.

While Plaintiff possesses the subjective belief that conduct in the workplace was

severe and pervasive, she has not shown that a rational jury could find the workplace

*permeated* with discriminatory intimidation, ridicule, and insult as to gender *or* race.

Merely because she had a lot of friction with Chief Bell and was denied the opportunity to

interview for the Chief of Police position is insufficient to demonstrate how Plaintiff herself

suffered discrimination that altered the terms and conditions of *her* employment, and that

her sex *or* her race was a motivating factor in that discrimination.  Plaintiff thus fails to present a triable issue of fact as to Defendant's motive.  *Throupe*, 988 F.3d at 1251.  The undersigned Magistrate Judge thus finds Plaintiff fails to meet her burden to overcome summary judgment and that summary judgment should be granted to Defendant on the hostile work environment claim.

### D. Discrimination and Retaliation, Oklahoma Anti-Discrimination Act.

As stated above, Plaintiff's Complaint makes it difficult to parse the exact number and type of claims; however, it appears she attempted to also bring claims identical to her Title VII discrimination and retaliation claims pursuant to Oklahoma's Anti-Discrimination Act ("OADA"), 25 Okla. Stat. § 1302(A)(1).  "Similar to the ADA and Title VII, Oklahoma law makes it unlawful to 'fail or refuse to hire, to discharge, or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, privileges or responsibilities of employment, because of . . . sex . . . or handicap unless such action is related to a bona fide occupational qualification." *Barzellone v. City of Tulsa*, 210 F.3d 389, 2000 WL 339213, at *5 n.6 (10th Cir. 2000) (unpublished Table opinion) (citing 25 Okla. Stat.  § 1302(A)(1)).  As such, "Plaintiff['s] state law discrimination claims are decided in the same manner as its federal claims." *Payne v. WS Servs., LLC*, 216 F. Supp. 3d 1304, 1311 n.1 (W.D. Okla. 2016).  For the same reasons her Title VII claims fail, Plaintiff's OADA claims likewise fail.  *Barzellone*, 2000 WL 339213, at *5 ("Barzellone's claim under the Oklahoma Anti Discrimination statutes fails for the same reasons her ADA and Title VII claims fail.").

24

**E. Retaliation for On-the-Job Injury, Oklahoma Administrative Worker's Compensation Act.**

Finally, Plaintiff alleges in her Complaint that she suffered retaliation for an on-the-job injury in violation of Oklahoma's Administrative Worker's Compensation Act ("AWCA").   Defendant contends there was no retaliation for her alleged on-the-job injury, no evidence of such, and that Plaintiff failed to even respond to this argument in her Response.   Plaintiff's response does contain mention of her on-the-job injury, but not substantively.   She blamed her termination in whole or in part on motivations of race, gender, her own complaints of discrimination and harassment, "and/or in retaliation for her on-the-job injury," *see* Docket No. 42, p. 3, and states in a heading that "[t]here are questions of material fact as to whether the Defendant retaliated against the Plaintiff due to her race, gender, and/or her on-the-job injury." *Id.*, p. 8.   She provided no such facts or evidence to support this assertion and does not dispute the facts set forth by Defendant on this issue.   As Plaintiff has neither substantively responded to Defendant's arguments nor provided any evidence for which a juror could find retaliation based on her injury, Defendant is entitled to summary judgment based on waiver.   *See Zane v. Kramer*, 195 F. Supp. 3d 1243, 1256 (W.D. Okla. 2016) ("Not only did plaintiffs not respond to defendants' argument in their summary judgment motion, thereby waiving it, plaintiffs did not produce any evidence from which a reasonable juror could find the defendants."), *subsequently aff'd sub nom. Hedger v. Kramer*, 726 Fed. Appx. 677 (10th Cir. 2018).

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's Motion for Summary Judgment and Brief in Support [Docket No. 34] should be GRANTED and the case be DISMISSED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 4th day of December, 2023.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**